IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANTI MARI KENNEDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 22-cv-05204 |
| | ) |
| INTRASPECTRUM COUNSELING, LTD., | ) |
| | ) |
| Defendant. | ) |

<u>Memorandum Opinion and Order</u>

The complaint in this case alleges that plaintiff worked for defendant as a billing coordinator for more than a decade until she was abruptly terminated just days after reporting sexual harassment by her supervisor. Plaintiff claims that although she was purportedly terminated for engaging in fraudulent billing practices, the real reason for her termination was retaliation in violation of Title VII of the Civil Rights Act of 1964. Plaintiff filed a charge of discrimination with the EEOC and received a right to sue letter in July of 2022. This action followed.

In its answer to the complaint, defendant included counterclaims for breach of contract and conversion. In these counterclaims, defendant alleges that after plaintiff's

termination, defendant discovered that she had not performed the job duties specified in her employment agreement. For example, plaintiff's duties included communicating with defendant's clients on the billing services telephone line; but defendant learned after her termination that plaintiff had canceled service to that line without notice to defendant and without establishing a forwarding number. In addition, plaintiff allegedly failed to "maintain and update the client financial files" accurately and failed to "communicate to [defendant] the status of clients' insurance benefits and applicability of waivers," causing defendant to incur additional credit card fees to re-bill its clients as well as additional personnel costs to correct plaintiff's work. And plaintiff allegedly failed to abide by contractual terms requiring her, upon her termination, to return property including records and materials belonging to defendant. In particular, defendant claims that plaintiff failed to return a book that defendant purchased for her use during her employment.

    Plaintiff moves to dismiss both of defendant's counterclaims, arguing broadly that they were not brought in good faith but rather as further retaliation for her report of sexual harassment and pursuit of her Title VII claim. In this connection, plaintiff observes that although defendant claims to have become aware of her alleged misconduct shortly after terminating her, it did not file this action until the deadline I established for the parties

2

to amend their pleadings. With respect to the specific theories of liability defendant advances, plaintiff argues that Illinois contracts law does not allow an employer to hold its employee liable for negligent failure to "do a good job," and that the *de minimis* doctrine compels dismissal of defendant's conversion claim. For the reasons that follow, I deny plaintiff's motion.

Plaintiff argues that defendant's contracts claim is legally defective because absent specific terms in the parties' employment contract entitling defendant to liquidated damages or consequential damages in the event plaintiff fails to perform her job duties, defendant's only remedy under Illinois law is to terminate her. She cites two cases for this argument, but neither supports dismissal on the facts alleged here. *Urological Group, Ltd. v. Petersen (In re Petersen)*, 296 B.R. 766, 780-781 (C.D. Ill. 2003), is a bankruptcy case in which the debtor's former employer sought to bar the discharge of a claim it asserted against her for lost profits that the employer attributed to the debtor's failure to meet the requirements of her job. After a trial on the merits, the court concluded that the employee "did not deliberately disregard any of her responsibilities," and that the evidence established, "at most, poor job performance." *Id*. at 780. Applying agency principles, the court reasoned that absent an express agreement, an "agent is not an insurer of the success of his undertaking and he does not guarantee his principal against

3

incidental losses, and if he acts with good faith and with due care he is not liable for losses which result from a mere mistake." *Id.* at 781.

Plaintiff next points to *Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 298 (E.D.N.Y. 2013)—another decision issued after a trial on the merits—but that case is likewise inapposite on the allegations here. In the portion of the decision featured in plaintiff's reply, the *Barbagallo* court held that under New York law, "employers may not assert a claim of damages against an employee for the employee's alleged negligent acts, or sue employees for lost profits caused by alleged poor performance." *Id.* at 298. In any event, the court added, the employer's evidence of negligence was "insubstantial" and was "not credited." *Id.* Setting aside that the cited passage addresses the adequacy of the employer's *tort* claim rather that its contracts claim, as in *Petersen*, the *Barbagallo* employer sought to recover lost profits, not costs allegedly incurred as a direct result of the employee's failure to perform duties specifically required by her contract. The employer's breach of contract claim, meanwhile—which alleged that the employee violated a contractual non-compete clause—was dismissed for reasons specific to the interpretation of non-compete agreements, which have nothing to do with any issue in this case.

4

*Petersen* and *Barbagallo* both reflect the general principle that employers may not ordinarily recover in contract or negligence from employees whose job performance falls short of expectations. While this general principle is sound, it does not compel dismissal here because defendant alleges that plaintiff failed to perform specific duties required by her contract, and it identifies discrete losses that it claims to have incurred as a direct result. Unlike in the cases plaintiff cites, defendant does not seek to recover "lost profits" or other consequential, incidental, or downstream damages, but only a narrow category of costs directly occasioned by plaintiff's alleged failure to perform explicit contractual duties. In short, defendant has adequately alleged the elements of breach of contract under Illinois law, i.e., the existence of a valid and enforceable contract; performance by the defendant; breach by the plaintiff; and resultant injury, *see Gonzalzles v. Am. Exp. Credit Corp.*, 733 N.E.2d 345, 351 (Ill. 2000), and plaintiff's cited authorities do not establish that the damages it seeks are unavailable as a matter of law.

So, too, of defendant's counterclaim for conversion, which requires it to plead: "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the [plaintiff] wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cty.*

5

*State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)). Defendant adequately alleges that plaintiff failed to return a book that defendant owned and allowed plaintiff to use during her employment, despite defendant's demand that she return the book as required by the parties' contract. Defendant does not allege the book's value, but plaintiff values it at approximately $100. Even assuming that plaintiff's valuation is accurate, $100 is substantially more than the values at issue in *Chicago Car Care Inc. v. A.R.R. Enterprises*, No. 19-CV-07687, 2021 WL 1172262, at *3 (N.D. Ill. Mar. 29, 2021), and similar decisions dismissing conversion claims under the *de minimis* doctrine. Those cases concerned claims based on the receipt of unsolicited faxes, which the plaintiffs claimed consumed their ink, toner, and one sheet (per plaintiff) of paper. *See id*. ("[T]he ancient maxim 'de minimis non curat lex' might well have been coined for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the generation of a one-page unsolicited fax advertisement.") (citation omitted). One might reasonably wonder whether defendant's pursuit of a $100 counterclaim lends credence to plaintiff's argument about defendant's motives; but I am not persuaded that the claim must be dismissed on the basis that defendant's damages are negligible.

6

To be clear, the foregoing is not to suggest that either of defendant's counterclaims is meritorious. Indeed, if plaintiff's theory that they were brought in bad faith in retaliation for her reporting of sex-based harassment and filing of a Title VII claim is borne out by the evidence, plaintiff may well be entitled to sanctions. Based on the pleadings alone, however, and in view of the narrow relief defendant seeks, I conclude that the counterclaims may proceed.

For the reasons stated above, plaintiff's motion to dismiss is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: October 18, 2023